**DeJohn PORCH, individually and on behalf of all those similarly situated, Plaintiff,**

v.

**MASTERFOODS, USA, INC. and does 1 to 500, inclusive, Defendants.**

**Case No. CV 06–6431 SVW (CWx).**

United States District Court, C.D. California.

Sept. 22, 2008.

---

Henry M. Lee, Henry M. Lee Law Corporation, Los Angeles, CA, for Plaintiff.

David A. Flores, Laura Bailey Gallagher, Thomas R. Davies, Harmon and Davies PC, Lancaster, PA, David P. King, King Cheng and Miller LLP, Joshua L. Harmon, Harmon and Davies PC, Pasadena, CA, Harry R. Harmon, Starr H. Arvay, Lori N. Brown, Las Vegas, NV, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [75] [JS–6]

STEPHEN V. WILSON, District Judge.

### I. INTRODUCTION

Plaintiff DeJohn Porch ("Plaintiff" or "Porch"), individually and on behalf of those similarly situated,[1] brings this action against Defendant Masterfoods U.S.A., Inc. ("Defendant" or "Masterfoods") and Does 1–100, alleging numerous violations of the California Labor Code, California Code of Regulations and Industrial Welfare Commission Order (No. 4–2001). Defendant Masterfoods now brings before the Court its Motion for Summary Judgment. For the reasons set forth below, the Court GRANTS Defendant's Motion.

### II. BACKGROUND

#### A. Procedural History

Plaintiff filed his original complaint in the Superior Court of Los Angeles County on October 28, 2005. The complaint was amended and stayed pending disposition in the California Supreme Court of *Murphy v. Kenneth Cole*, 40 Cal.4th 1094, 56 Cal. Rptr.3d 880, 155 P.3d 284 (2007), except with regard to discovery matters. In September 2006, Plaintiff again amended the complaint to include a class of individuals defined as "all California nonexempt employees" working for Masterfoods between the time of October 2001 to October 2005. The case was then removed to this Court on the basis of the Class Action Fairness Act ("CAFA") and Plaintiff's motion to remand the case was denied. The Court continued the stay pending a decision in *Murphy*.

Plaintiff sets forth six Causes of Action in his Third Amended Complaint. The First Cause of Action alleges violations of California's Bus. & Prof.Code Section 17200, et seq. against all Defendants for their failure to pay employees for all overtime worked; failure to provide appropriate meal and rest periods; failure to provide employees with accurate accounting of wages paid; and failure to maintain accurate records of hours worked and wages paid. (Third Amended Complaint, at ¶ 15.) ("TAC"). The Second Cause of Action is levied against all Defendants and alleges violations of the California Code of Regulations and the Industrial Welfare Commission Order for failure to appropriately pay non-exempt employees overtime wages. (TAC, at ¶¶ 20–21.) The Third Cause of Action alleges a failure to provide meal periods in violation of the California Labor Code Section 512 and the applicable Industrial Welfare Commission Order. (TAC, at ¶ 26.) The Fourth Cause of Action alleges violations of the same provisions for failure to provide rest periods in accordance with Labor Code Section 226.7. Plaintiff's Fifth Cause of Action alleges that waiting time penalties are owed for the time since Plaintiff was terminated. (TAC, at ¶ 34.) Plaintiff's Sixth Cause of Action asserts a violation of California Labor Code Section 226, et seq., for failure to provide appropriate wage information including the exact number of hours worked and the rates of pay for such hours. (TAC, at ¶ 36.)

On July 18, 2007 the Court denied Masterfoods' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), which was sought on the grounds of preemption by the Labor Management Relations Act. [Doc. 52.] On September 26, 2007, Masterfoods filed a Motion for Summary Judgment, alleging that Plaintiff fails to present a "triable issue of fact and that Masterfoods is entitled to judgment as a matter of law on all

---

1. Plaintiff also filed a Motion for Class Certification. However, since this Order disposes of all Plaintiff's claims, the class certification issue is moot.

counts of the Complaint." (Motion for Summary Judgment ("Motion"), at 9.)

## B. Factual Background

### 1. Parties involved in Dispute

Defendant Masterfoods is an unincorporated division of Mars, Inc., headquartered in Virginia and incorporated in Delaware. Plaintiff, DeJohnn Porch, was an active employee at Defendant Masterfoods from approximately March 1999 through December of 2004, at which point he went on sick leave. (Def. Statement of Undisputed Facts ("DSUF") at 1.)[2] During this time period, Plaintiff worked as a Customer Service Representative, whose duties included contacting customers to ensure the delivery of Masterfoods products. (*Id.* at 3.) Plaintiff received favorable reviews from his supervisors during his active employment with Masterfoods, and likewise praised his supervisors and managers for the work environment that they created during this period. (*Id.* at 4, 5.) During the relevant period of employment, Plaintiff was paid for all of the hours of overtime that he reported to Defendant through the appropriate time-keeping systems.[3] (*Id.* at 6.) This included 47 hours of overtime in 2001; 94 hours in 2002; 5 hours in 2004; and 20 hours in 2004.(*Id.*) Additionally, others in Plaintiff's workgroup reported, and were paid for, overtime hours without discipline. (*Id.*) On numerous occasions during his time of employment Plaintiff filed for leave under the Family and Medical Leave Act and received the leave he requested. (*Id.* at 8.)

**2.** The dispute as to Plaintiff's employment with Defendant Masterfoods is addressed *infra* III.B.iv.

**3.** Although Plaintiff contests this fact in its Opposition to Defendant's Statement of Undisputed Facts, Plaintiff objects on the basis of that the system does not account for time

### 2. Policies and Procedures at Issue

#### a. Overtime and Time–Keeping Policies

The first issue presented in the instant litigation is Defendant's policy and practice of overtime work. Masterfoods's overtime policy requires overtime pay for those employees whose work exceeds 8 hours per day 40 hours per week. (DSUF, at 20.) Masterfoods policy also requires its associates to "obtain manager's approval before working overtime, which Plaintiff understood to be the case." (*Id.* at 22.) Associates, as nonexempt employees, were required by Masterfoods to punch in at the start of the workday on a Kronos time clock, which would mark the time at which they began. (*Id.* at 23.) The associates punched out, however, only if they left the office at a time "different from their normally scheduled finish time." (*Id.*) The standard schedule in the National Office was typically eight and a half hours, which included a half-hour meal break that Masterfoods automatically deducted for a total eight hours of work per day. (*Id.*) Accordingly, the time-keeping system in place at Masterfoods would keep a daily work period of eight hours for associates using standardized hours and schedules.

Beginning in February 2002, associates in the National Office gained access to a computer "Labor Scheduling System" ("LSS"), which allowed these associates to report changes in their schedule to their managers for approval. (*Id.* at 23.) The LSS timekeeping system in place was an automated clock-in/clock-out system whereby Masterfoods entered a set clock-in time into an employee's records and also

worked but not entered into the system. (Opp. Statement of Undisputed Facts ("Opp. SUF"), at 6.) The actual factual allegation that Plaintiff was paid for the hours recorded, however, is not in dispute. The Court will address this issue further below. *See infra* III.B.

entered a set clock-out time eight and a half hours from the clock-in time. (Monica Blake Deposition ("Blake Dep."), at 67.) The system would automatically deduct half an hour for a lunch break. (*Id.*, at 69.) In addition to these functions, associates in the National Office could use the LSS system to record changes to their time record—including working overtime and working through lunch periods. Employees would also receive a "punctuality bonus" for clocking in using the Kronos time system at or before the time when their shift was supposed to start according to the LSS system. (DeJohn Porch Deposition ("Porch Dep."), at 44.) The employees did not clock out using the same system, but instead were expected to leave at the time that was set through the LSS system. (DSUF, at 22.) If they did not leave at that set time, LSS made it possible for the employees to notify supervisors of the change in their hours or the overtime worked. Plaintiff was trained in usage of this system and did, on occasion, record changes through LSS.[4] Associates in the National Office could notify, via e-mail, their manager or payroll coordinator for changes to their timekeeping. (*Id.* at 24.) The paychecks sent through this system were accurate, insofar as they correctly paid the periods of work reported through LSS by the Masterfoods employees. (*Id.* at 25.) Plaintiff does not dispute the use of the system, or the reporting process that was supposed to occur through his manager. (Opp. SUF, at 30.) Plaintiff also acknowledges that he never directly told his manager or his time keeper that he worked through his lunch periods. (*Id.* at 26.)

b. Meal and Rest Breaks

Defendant Masterfoods contends that it has a written and posted policy that re-quires employees to take a 30 minute meal break during the workday. (DSUF, at 13.) Plaintiff does not dispute the existence of such a written and posted policy. Instead, Plaintiff asserts that Defendant failed to comply or ignored the stated policy, instead "enforce[ing] a company wide policy restricting employees to Defendant's onsite cafeteria during meal breaks...." (Opp. SUF, at 13.) It is undisputed that Plaintiff "knew and understood Masterfoods' policy regarding meal and rest breaks ... though for a while he thought lunch breaks lasted an hour." (DSUF, at 14.) Plaintiff admits that he did take meal breaks and rest breaks, which included, on occasion, hour long breaks. (*Id.* at 15.) Plaintiff asserts, however, that during this time he was confined to the on-site cafeteria and therefore not given a genuine meal break. (Opp. SUF, at 15.) During his employment with Masterfoods, no one ever told Plaintiff to forego a meal and rest break. (DSUF, at 16.) Plaintiff also never reported to anyone at Masterfoods that he worked through his break periods. (DSUF, at 17.) However, Defendant's payroll coordinator Martha Hernandez admitted that she could see whether or not Plaintiff was seated at his workplace. (Martha Hernandez Deposition ("Hernandez"), at 93.)

### III. ANALYSIS

#### A. Motion for Summary Judgment

Fed.R.Civ.P. 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los*

---

4. Although it is disputed whether Plaintiff "frequently" used this system to input changes (Opp. SUF, at 23), it is undisputed that Plaintiff did make changes to his schedule and did know how to use the system. (*Id.*)

*Angeles,* 123 F.3d 1259, 1263 (9th Cir. 1997). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000). Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must identify specific evidence from which a reasonable jury could return a verdict in its favor). Indeed, if the moving party meets its initial burden at the summary judgment stage, the e nonmoving party cannot defeat such a motion by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Testimony that is conclusory or speculative in nature that is presented in the moving papers is insufficient to present a genuine issue of fact to defeat summary judgment. *White v. Starbucks Corp.,* 497 F.Supp.2d 1080, 1083 (N.D.Cal.2007) (citing *Thornhill Publishing Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979)). Moreover, " 'a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.' " *Stevens v. County of San Mateo,* 267 Fed.Appx. 684, 685 (9th Cir. 2008) (quoting *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991)). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy,* 952 F.2d at 266.[5]

## B. Plaintiff's Claims

Plaintiff's Complaint alleges violations of California Labor Laws in addition to violations of Industrial Welfare Commission ("IWC") Order 4–2001 as part of the Second, Third, and Fourth Causes of Action.[6] As Count One for violation of the Cal. Bus. & Prof.Code is premised on liability regarding the other counts of the TAC, the Court will first examine Plaintiff's second through fourth causes of action.

---

**5.** This rule relates to " 'sham' testimony that flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Kennedy,* 952 F.2d at 266.

**6.** Although the Industrial Welfare Commission is no longer an active organization, its wage orders remain in effect. *See Bearden v. U.S. Borax, Inc.,* 138 Cal.App.4th 429, 434, 41 Cal.Rptr.3d 482 (2006).

### 1. Alleged Unpaid Overtime (Second Count)

Plaintiff's Second Cause of Action alleges that Defendant Masterfoods failed to pay overtime wages to its employees in violation of the California Labor Code and the applicable Industrial Welfare Commission Order. (TAC, at ¶¶ 19–21.) As clarified in the moving papers and at hearing, this claim is premised on a number of separate theories. First, that Plaintiff reported and was not paid overtime. Second, that Plaintiff worked overtime hours without reporting those hours, and was not compensated. Finally, that Defendant had a policy of discouraging its employees from reporting overtime. For the reasons set forth below, Plaintiff's own deposition testimony and the records presented through discovery demonstrate that there is no genuine issue of material fact on this claim.

■ Under California law, an employer must pay overtime to nonexempt employees for the time spent working in excess of 40 hours a week. As set forth in the pertinent part of California Labor Code § 510(a):

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one

rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work. Cal. Labor Code § 510(a). An employee may bring a claim for unpaid wages by alleging that he worked off-the-clock without pay under applicable sections of the California Labor Code and its pertinent IWC Order. (*See* Cal. Labor Code §§ 201–204; Cal. Admin. Code tit. 8, § 11050(3)(A).) Generally, to prevail on claims of off-the-clock overtime work, a plaintiff must demonstrate knowledge on the part of the employer of the overtime work that the individual has worked. *See Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000); *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1083 (N.D.Cal.2007) ("[t]o prevail on his off-the-clock claim, [plaintiff] must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work."); *Brinker Rest. Corp. v. Superior Court*, 165 Cal.App.4th 25, 61, 80 Cal.Rptr.3d 781 (Ct.App.2008) (discussing the element of knowledge in an off-the-clock work claim). Plaintiff now seeks to recover wages for those periods of overtime worked without pay in violation of the California Labor Code and the accompanying IWC order. Although Plaintiff acknowledges the written policy of Defendant Masterfoods to provide compensation for overtime hours reported, he claims that the effective policy of Masterfoods is to require overtime but prevent reporting or payment of such overtime.

■ As set forth in the factual background, Masterfoods created a system that allowed for the recording of work hours by its employees and the input of overtime. Through the LSS system, an employee could obtain the manager's approval for reporting overtime worked, as well as input general changes in the time periods worked. An associate could report over-

time worked to a time keeper or manager through email or other communication. As Plaintiff stated in his deposition testimony:

Q. Do you recall having a program called LSS on your computer?

A. Possibly.

Q. Do you recall using that program at all to notify people of any changes in your schedule?

A. Oh, yes.

...

Q. Okay. So you remember using the LSS on your computer to notify people of a vacation?

A. Managers, yes.

Q. Managers. And you recall using LSS to notify managers of a change in your scheduled time?

A. Yes.

...

Q. If you were—what was your schedule, typically, while you were working at Masterfoods?

A. I think it was 6:30 a.m. to 3 p.m.

Q. And did you have a punch clock that you would punch in everyday?

A. Uh-huh, yes.

Q. Is that a yes?

A. Yes, it is sorry.

...

Q. And if you worked past three was there any requirement regarding punching in or out at that point?

A. Yes.

Q. And what was that requirement?

A. It changed a couple of times. Usually if you work overtime you are to clock out. And if you have a regular schedule then the system automatically clocks you out.

Q. So if you finish work by three you did not have to clock out?

A. Right.

(Porch Dep. at 42–45.) Plaintiff acknowledges the inner workings of the system, both the ability to punch in using the Kronos system every morning, and the manner of reporting time when he stayed past his scheduled stop time.[7] Accordingly, as an initial matter, Plaintiff possessed knowledge of the system for reporting overtime.

Plaintiff at first appeared to assert that he worked and reported overtime for which he was not paid. In his opposition papers, however, it is not clear that Plaintiff maintains this position. In deposition testimony, Plaintiff states that he did not report to any of the individuals with authority at Masterfoods about his practice of working overtime hours that he was not billing to the company. (Porch Dep., at 72.) Defendant Masterfoods presents records of all of the overtime hours reported through LSS along with confirmation of sending payment in the amount owed according to its records. Additionally, in his deposition, Plaintiff admitted that he would routinely inspect his paycheck for inaccuracies and that, on one occasion, he reported an inaccuracy that was later corrected. (*Id.* at 74.) Given the arguments raised by the parties, the records presented by Defendant, and the lack of any evidence set forth by Plaintiff that he reported hours that were not paid, the Court finds this claim lacks merit.

Plaintiff next argues that he worked uncompensated overtime that was not reported through the use of Masterfoods's scheduling system. Plaintiff admits, however, in

---

7. The undisputed evidence presented at this stage demonstrates that Plaintiff recorded 499 changes to the LSS system from the time of its implementation. (LSS Audit Trail, Exhibit F.) Although Plaintiff disputes that he "frequently" recorded changes, the dispute over whether the number of changes exhibits frequency does not diminish the familiarity Plaintiff demonstrated with the LSS system by the number of changes.

deposition testimony that he never told his manager about his practice of working overtime without reporting such hours. (Porch. Dep., at 55.)[8] Accordingly, given the deposition testimony of Plaintiff, there was never a discussion of his unreported overtime, or any direct knowledge of Plaintiff's supervisors regarding his overtime hours.

▉ Plaintiff similarly asserts that, even in the absence of direct knowledge, Defendant Masterfoods, through its supervisors, should have known that he was working hours in excess of his regularly scheduled shifts and, therefore, possessed constructive knowledge of his overtime work. These allegations, however, simply contradict the given facts of the case. Defendant uses a scheduling system whereby its associates can report the overtime that they worked to the employer. Plaintiff admits that he was and is familiar with the workings of this system and the general nature of reporting overtime. Plaintiff did, at various points during his tenure, report overtime he worked. He did not discuss his failure to report overtime hours worked to a supervisor and Plaintiff acknowledges that his manager never told him not to report overtime hours. The "constructive" notice that Plaintiff attempts to create does not facilitate any genuine issue of fact because there is no basis, in the allegations or materials presented by Plaintiff, for concluding that others would know that he was working off-the-clock. The declara-

tions and depositions demonstrate that Plaintiff failed to inform others of his practice and that his manager did not know he worked off-the-clock hours. (Davies Decl., at 2.)

The facts of this case are analogous to those presented in the case of *White v. Starbucks Corp.,* 497 F.Supp.2d 1080 (N.D.Cal.2007). In *White,* the plaintiff, a Starbucks employee bringing a claim for uncompensated overtime, conceded that he never told a manager or supervisor at Starbucks that he worked off-the-clock. 497 F.Supp.2d at 1083. The Plaintiff in *White* further acknowledged that he was paid for the overtime that he did report and that other employees reported overtime hours without facing discipline. *Id.* The plaintiff then attempted to prove a form of "constructive" knowledge of his overtime by arguing that Starbucks knew the hours it would take to perform certain tasks and that he had to work overtime in order to satisfy the requirements of his job. *Id.* at 1084. The Northern District court found, however, that the simple knowledge that White was at the store during any given time was not sufficient to put the defendant on notice that he was working off-the-clock during that time. *Id.* Instead, an "employee must show that he was forced to forego his meal breaks as opposed to merely showing that he did not take them regardless of the reason." *Id.* at 1088–89. This determination by the Northern District Court is supported by prior holdings of the California Supreme

---

8. Specifically, in response to questions concerning an implied policy related to working overtime and not reporting such hours, Plaintiff made the following concession:

Q: Did you ever tell [Supervisor] Martha Hernandez that you were working overtime and not billing it?

A: No.

(Porch Decl., at 55.) There are other admissions in the deposition testimony of such facts:

Q: When you worked overtime and did not report it, was that on the instruction of your manager that you do that work?

A: Yes.

Q: On every case the manager told you to work overtime and not report it?

A: No.

Q: Your manager didn't tell you to work overtime and not report it?

A: No.

(Porch Dep., 122–123.)

Court, which has indicate that an employer must have knowledge of the off-the-clock work. *Morillion,* 22 Cal.4th at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981)).[9] *See also Brinker,* 80 Cal.Rptr.3d at 811 ("[Plaintiffs] do not submit evidence showing, on a class-wide basis, the reason why they worked off the clock. Indeed, as Brinker points out, two employees that declared they 'often performed job duties while clocked out for meal breaks or for the day' did not indicate whether they were required to do so or did so by their own choice, nor whether their supervisors had knowledge of such activities .... resolution of these claims would require individual inquiries in to whether any employee actually worked off the clock, whether managers had actual or constructive knowledge of such work and whether managers coerced or encouraged such work.")

■ Finally, Plaintiff alleges that there was a general fear of reporting overtime hours, and that Masterfoods encouraged its employees not to bill overtime hours. Defendant's declarations and exhibits demonstrate contrary realities, however, and

have been met without any authoritative evidence on Plaintiff's behalf. Plaintiff himself was not reprimanded in any way; other individuals who reported greater amounts of overtime received commendation. Even assuming that Defendant preferred its employees not work overtime, Plaintiff has failed to point to any statute or case law that would prevent an employer from creating a system wherein it encourages employees not to work overtime. Indeed, there are cases stating that an employer may discourage overtime work in his discretion. *Fletcher v. Universal Technical Institute, Inc.,* 2006 WL 2297041, at *6 n. 24 (M.D.Fla.2006).[10] The material issue is whether there exists a form of knowledge and intimidation regarding employees' reporting of overtime. As already discussed, Plaintiff simply failed to report the overtime that he worked and failed to inform Defendant of his practices of working off-the-clock hours. (Porch Dep., at 51; 144.) In addition, Plaintiff stated in deposition testimony that he was never told by supervisors at Masterfoods ever told him to work off-the-clock without reporting his overtime hours. At his deposition, Plaintiff stated:

**9.** In *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413 (9th Cir.1981), the Ninth Circuit affirmed summary judgment in a Fair Labor Standards Act case against the plaintiff on a claim that he worked uncompensated overtime. The Ninth Circuit noted that "Forrester himself testified in his deposition that he 'did not mention any unpaid overtime work to any store official prior to filing his complaint.' .... Forrester did not raise a genuine issue of material fact concerning whether any official of Roth's should have known about his alleged uncompensated hours." 646 F.2d at 414.

**10.** Although *Fletcher* mentions this point in reference the FLSA, the same policy would apply in this case where, if Plaintiff's allegations are taken as true, the employer discouraged the use of overtime but still allowed for its reporting and paid appropriately where

reported. Indeed, Federal and state requirements mandating payment of additional wages for overtime inherently serve the function of discouraging employers from having its employees work overtime hours, as such a practice would force an employer to pay additional wage rates to its employees. Such a rationale has been acknowledged by California courts as a policy purpose behind overtime laws generally within California. *See, e.g., Huntington Memorial Hosp. v. Superior Court,* 131 Cal.App.4th 893, 902, 32 Cal. Rptr.3d 373 (2005) (stating " 'The purpose behind the overtime pay requirement is twofold: (1) to spread employment by encouraging employers to avoid overtime work and thereby employ additional workers on a regular basis; and (2) where the employer prefers overtime work, to compensate the employee for the burden of working longer hours.' ") (internal citations omitted).

Q: On every case the manager told you to work overtime and not report it?

A: No.

Q: Your manager didn't tell you to work overtime and not report it?

A: No.

(Porch. Dep., at 122–23.) In his opposition papers, Plaintiff claims that he feared reporting overtime and suffering from disciplinary action. The undisputed facts contradict this assertion. It is undisputed by the parties that Plaintiff did indeed report overtime hours during his years of work with Masterfoods. (DSUF, at 6.) The amount of this overtime varied during the course of Plaintiff's employment, fluctuating from 20 hours to 94 hours during given years. (Def. Ex. D.) Additionally, other members of Plaintiff's work group reported overtime hours of up to 220 hours. (Id.) During those same years he received favorable reviews from his managers, and bestowed upon his managers an equal amount of praise. (SUF, at 4–5a.) Plaintiff admits that he was never suspended, denied a raise, had his pay reduced, or received a bad review due to his working overtime. (Id. at 28.) [11] In addition, Plaintiff acknowledges that numerous other employees who reported greater amounts of overtime were not reprimanded; indeed, one received a promotion during the same period. (Id. at 6; Porch Dep. at 51.) Such facts, set forth by Defendants and admitted in deposition testimony, contradict the allegations that disciplinary action followed from the reporting of overtime. Defendant has presented employment records demonstrating that it is common practice for employees to report overtime during the course of the year without suffering reprimand. Plaintiff, on the other hand, has come forth with scant evidence relating to his claim that there

was a fear of reporting overtime or a policy of requiring Masterfoods employees to work without reporting overtime.

2. *Meal Break Claim (Third Count)*

A claim based on missed meal breaks is predicated on two sections of the California Labor Code and their applicable IWC Wage Order. California Labor Code § 512 provides, in pertinent part:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal. Lab.Code § 512(a). In a separate provision, California Labor Code § 226.7 states:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

---

11. Plaintiff does not dispute this point, though Plaintiff argues that he was subject to intimi-

dation and discipline for using the overtime system. (Opp. SUF, at 28.)

In accordance with these statutory guidelines, the IWC issued Wage Order No. 7, which further states:

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work, the meal period may be waived by mutual consent of the employer and the employee. . . .
>
> (C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. (D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

Cal.Code Regs., tit. 8, § 11070. The statutes accordingly require that an employer provide at least a 30 minute meal break to its employees where they are relieved of all duty involving their employment. Plaintiff alleges numerous deficiencies with the system of meal breaks instituted by Defendant. First, Plaintiff claims that he did not get meal breaks in accordance with the statute; second, Plaintiff claims that the meal breaks that he did get did not relieve him of all duties in accordance with the statute; third, Plaintiff asserts that the system used to record lunch breaks was violative of California labor laws; and, finally, Plaintiff alleges that he was forced to stay at the employer's on-site cafeteria for the lunch period.

### a. Receiving Meal Breaks

■ Inasmuch as an employer is required to provide meal breaks for employees, "the California Legislature intended only for employers to *offer* meal periods-not to ensure that those periods were actually taken." *White*, 497 F.Supp.2d at 1088 (emphasis in original). *See also Brown v. Federal Express Corp.*, 249 F.R.D. 580, 584–85 (C.D.Cal.2008).[12] If an employer were required to ensure that meal breaks were actually taken, the following scenario would be possible:

> Employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes, entitling them to compensation of one hour of pay for each violation. This cannot have been the intent of the California Legislature, and the court declines to find a rule that

---

12. One California appellate decision appears to place an affirmative duty on the employer to ensure meal breaks. *See Cicairos v. Summit Logistics, Inc.*, 133 Cal.App.4th 949, 962–63, 35 Cal.Rptr.3d 243 (2005). That case, however, cited to the specific facts of the case that allowed the employer to track all of the activities of its employees. *Id.* at 963, 35 Cal.Rptr.3d 243. Additionally, the case relied upon a non-binding Department of Industrial Relations Opinion Letter that other courts have found not only contradicts the language of the relevant law, but also would places impractical obligations on employers. *See, e.g., White*, 497 F.Supp.2d at 1088–89; *Brown*, 249 F.R.D. at 585–86. This case has also been distinguished by other California appellate cases. *See, e.g., Brinker*, 80 Cal. Rptr.3d at 806 ("Thus, from the plain language of section 512(a), meal periods need only be made available, not ensured, as plaintiffs claim." [¶ * 21] Continuing to further distinguish *Cicairos* on the basis of the explicit facts of that case.)

would create such perverse and incoherent incentives.

*White*, 497 F.Supp.2d at 1089. Plaintiff's claim that he worked through his meal break on some occasions (Porch Dep., at 156) does not in and of itself make Defendant liable. Because Plaintiff acknowledges that Masterfoods provides meal periods for use by its employees (Porch Dep. at 124–126.), Defendant fulfilled its statutory obligation to offer meal periods. However, Plaintiff next contends that the meal periods were not actually offered because Plaintiff, as discussed below, remained under Defendant's control during the meal breaks.

*b. On-site Cafeteria Policy and Control*

Plaintiff asserts that he was not relieved of duties during the meal periods that Masterfoods provided. As stated in IWC Order No. 7(C), "Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked." Plaintiff claims that, although he may have nominally received meal breaks, he was not relieved of all duties during those breaks, such that they would qualify as legal meal periods. As part of this claim, Plaintiff asserts that, through the use of an on-site cafeteria, Defendant Masterfoods exercised control over his time, and therefore failed to provide meaningful lunch breaks.

Plaintiff's claim is based on *Morillion*, 22 Cal.4th at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139, and a California appellate court decision in *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal.App.4th 968, 38 Cal.Rptr.2d 549 (1995). Plaintiff maintains that the issue of control is separate from that of the actual notice to the employer; essentially presenting parties with alternate modes of

proceeding with a claim. (Pl.'s Opp., at 12–13.) This distinction was discussed in *Morillion* and *Bono*. Accordingly, under California law, the two are distinct theories of compensable time. Plaintiff's first dispute is with the policy of Masterfoods, asserting that it does not provide meal breaks free from the employer's control.

In *Bono*, the Court stated that when an "employer directs, commands or restrains an employee from leaving the work place" that may establish such control that the meal period does not suffice under California law. 32 Cal.App.4th at 976, 38 Cal. Rptr.2d 549. As Plaintiff states, the appellate court in *Bono* analyzed a Division of Labor Enforcement Standards enforcement policy "regarding employers who restricted employees to the work premises during lunch break." (Pl.'s Opp., at 13.)

Plaintiff's own deposition testimony highlights the distinction between a case such as *Bono* and the instant litigation:

Q. But no manager ever told you not to go offsite for lunch; correct?

A. Not specifically.

Q. When you went off site for lunch, would you go with others from the company?

A. Sometimes.

Q. And who would you go with?

A. Lots and lots of people from our department.

. . .

Q. Did any manager ever in any way chastise you or write you up on a performance review for going off site for lunch?

A. No.

(Porch Dep. Vol. II., at 245.) [13]

Further demonstrating that Defendant's policy only "encouraged" employees to use

---

**13.** Other excerpts from Plaintiff's deposition testimony illustrate the options available to Plaintiff:

Q: You informed these folks that you had a private dining area at La Villa Basque at 11:00 a.m.

the cafeteria, Plaintiff admits that he could, and did, leave the Masterfoods campus to eat his lunch. (Porch Dep. Vol. II at 245.) [14] When an employer provides a service for the employees' convenience and leaves the employees free to choose whether to use it, the employees are not subject to the employer's control. *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 1104, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007) ("While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period."); *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 586, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000) (uncompensated time is such time employees can use " 'for [their] own purposes' "); *Bono*, 32 Cal.App.4th at 975, 38 Cal.Rptr.2d 549, *overruled on other grounds by Tidewater Marine W. v. Bradshaw*, 14 Cal.4th 557, 574, 59 Cal.Rptr.2d 186, 927 P.2d 296 (1996).

California case law interpreting this notion of "control" focuses on whether the worker was required to use the facilities provided by the employer. For example, in *Overton v. Walt Disney*, a California appellate court determined that the time spent riding a company-provided shuttle from its parking lot did not constitute compensable time. 136 Cal.App.4th 263, 271–

A: Uh-huh.

Q: I take it that's a place you had eaten before?

A: Over the years. It's one of the oldest, I think, restaurants in Vernon.

Q: Okay. And did you in fact, go there for lunch the following date?

A: I'm pretty sure we did.

Q: And how long did you take for that lunch?

A: Not very long. It was only, like, around the corner from the office....

[...]

Q: Well, can you leave National office, go to La Villa Basque—do you have to drive there?

A: ... it took a couple minutes, probably two, two and a half minutes to drive there.

Q: And I take it you clocked out for lunch if you were going to be there for more than a half hour.

A: Yeah....

[...]

Q: That was your practice was when you left the facility, you would clock out and clock back in?

A: Yes. If you had to leave the site, you know, the actual drive off, they wanted us to do that.

(Porch Dep., at 161–62.) (Aug. 29, 2007.)

**14.** The Deposition of Monica Blake supports the distinction between the policy of encouraging employees to remain on campus, and the practice of allowing those employees to leave for lunch if they so wished:

Q: "The business believes the quality of life at work is enhanced by cafeteria facilities that offer a variety of fresh, wholesome, and nutritious meal choices at reasonable prices. Therefore, when a cafeteria is provided, associates are encouraged to remain on the premises for meal. The only exception to this is when cafeteria services are not available." And the last line says, "Non-associates will pay higher prices for all items purchased in the cafeteria."

Have you ever seen this document before Ms. Blake?

A: I have.

Q: Now, is this a policy that Masterfoods has?

A: Yes.

Q: Is it a policy that Masterfoods enforces?

A: No.

Q: Is there a cafeteria in the Vernon facilities?

A: Yes.

Q: And do you know why Masterfoods does not enforce this policy?

A: Yes, I think so.

Q: Could you explain for me why?

A: Associates have a choice of where they go for lunch and what they choose to each for lunch.

Q: So what's the purpose of having a policy restricting individuals to the cafeteria when it's never enforced? ... [objections to nature of question]

A: The policy doesn't restrict.

72, 38 Cal.Rptr.3d 693 (2006). As the court in *Overton* stated, "the key factor is whether Disney *required* its employees who were assigned parking in the Katella lot to part there and take the shuttle." *Id.* at 271, 38 Cal.Rptr.3d 693 (emphasis in original). The court noted that employees were free to choose, rather than required, to take the employer's bus. *Id.*

In *Morillion,* the California Supreme Court emphasized the mandatory nature of the policy. The court said:

> We nonetheless remain optimistic that employers will not be discouraged from providing free transportation as a service to their employees. As we have emphasized throughout, [defendant] *required* plaintiffs to ride its buses to get to and from the fields, subjecting them to its control.... However, employers may provide optional free transportation to employees without having to pay them for their travel time, as long as employees do not require employees to use this transportation.

22 Cal.4th at 594, 94 Cal.Rptr.2d 3, 995 P.2d 139 (emphasis in original). Here, Plaintiff has presented no evidence that Defendant required workers to eat lunch at the company cafeteria. In fact, the company cafeteria is the type of service that the Supreme Court hoped its decision would not discourage.[15]

■ As demonstrated by the deposition testimony and evidence before this Court, Plaintiff along with numerous other employees left the cafeteria area to engage in business of their own during work periods. The employees were not restricted to the on-site cafeteria; the strongest that could be said for the Plaintiff's case is that they were encouraged to eat at the on-site cafeteria. Such a rule, however, was clearly not a "restriction" given the number of times that Plaintiff himself ate outside the confines of the on-site cafeteria. Plaintiff fails to present any evidence that employees who left the Masterfoods campus during their meal periods were fired or otherwise disciplined,[16] which would effectively mandate the control of the employer.[17]

Additionally, Plaintiff argues in his Opposition that Masterfoods was on actual or constructive notice of his missed meal periods and should have been aware that he was owed overtime. Plaintiff points to an email he sent to his supervisor and claims that his supervisor was capable of seeing Plaintiff from across the office. As to the e-mail, it merely stated that Plaintiff took one hour-long lunch per month; it does not say that Plaintiff took only one lunch break per month. (Lee Decl., Ex. 59.)

■ On the second assertion, Plaintiff argues that his supervisor, Martha Hernandez, worked in the same area and could see Plaintiff from across the room. However, as set forth in the depositions, there were as many as 75 employees in the same area as Plaintiff and Hernandez. Moreover, Plaintiff never reported missing meal breaks to Hernandez, and Hernandez was a non-exempt employee who took her own

15. In *Bono*, the court noted that the workers "must remain on the plant premises during their 30–minute lunch period unless they [made] prior arrangements" to leave. 32 Cal. App.4th at 972, 38 Cal.Rptr.2d 549.

16. Along with his opposing papers, Plaintiff filed a declaration that, at points, contradicts statements previously made while under oath at deposition testimony. Such contradictions cannot be used to create issues of fact to avoid summary judgment. *See, e.g., Kennedy,* 952 F.2d at 266.

17. In *Brinker,* the court noted that an employer could be liable for missed meal breaks if individual managers "coerced or encouraged" the employee to work through breaks. 165 Cal.App.4th at 61, 80 Cal.Rptr.3d 781. No such allegations have been made here. Nor is there evidence to support such a finding.

lunch breaks. (Porch. Dep., at 118; Hernandez Dep., at 96–97.) These facts are not sufficient to support a finding of constructive notice. *See Wang v. Chinese Daily News, Inc.*, 435 F.Supp.2d 1042, 1060 (C.D.Cal.2006) (finding constructive notice when plaintiffs repeatedly complained of overtime and had regular contact with supervisors).

Accordingly, given that Plaintiff has not submitted evidence to support a finding that Plaintiff was under Defendant's control or that supervisors had notice, the Court finds that Defendant's cafeteria policy and practice complies with California law.

### c. Recording of Lunch Breaks

■ The relevant IWC Order and California Code of Regulations states that "[e]very employer shall keep accurate information with respect to each employee including ... [t]ime records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded." IWC Order No. 4–2001 § 7; Cal.Code Regs., tit. 8, § 11070. Where the employer has failed to keep accurate records, "the consequences for such failure should fall on the employer, not the employee." *Hernandez v. Mendoza*, 199 Cal. App.3d 721, 727, 245 Cal.Rptr. 36 (1988). Therefore, if a conflict over the correct amount of hours worked by the employee exists because the employer has failed to keep accurate records, "imprecise evidence by the employee can provide a sufficient basis for damages." *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). In the instant action, the claims over record keeping, however, mimic those brought as to meal policies. Plaintiff essentially argues that there was not an accurate recording of meal breaks due to his missed meal breaks and that Defendant counted meal breaks not taken. Defendant, however, allows its employees to inform them of missed meal breaks and Plaintiff failed to do so. Furthermore, Defendant has discharged its legal duty. All that is required by the Defendant under the Code of Regulations is that Plaintiff's meal breaks were actually recorded. Under the LSS timekeeping system, an employee would be recorded as working eight and a half hours with thirty minutes deducted for a meal break. In addition, an employee, by informing a manager, could report a missed meal break through use of a "no lunch taken" code. (Blake Dep. at 79–81.) [18] Hence, Defendant has complied with the applicable standard for recording Plaintiff's meal breaks.

### 3. Rest Break Claim (Count Four)

■ Under California IWC Wage Order No. 4, employers are required to "authorize and permit" a ten minute rest period for every four hours of work. 8 Cal. Code Regs. § 11070, Subdiv. 12. It was understood by Plaintiff that it was Masterfoods's policy to allow for fifteen minute rest breaks for every four hours worked by its employees. (Porch Decl., at 124.) Just as with the provision of meal periods, the law merely requires employers to make the rest breaks available to its employees. *See White*, 497 F.Supp.2d at 1086. Again, Plaintiff also admits that he was never told to work through any of his rest breaks (Porch Decl., at 129) and that he never complained to anyone that he worked through rest breaks. (*Id.* at 130.) Plaintiff also stated that he did take breaks of five or ten minutes on occasion.

---

**18.** The presumption assumes a lunch break, Defendant maintains, because Masterfoods has a policy of only allowing employees to skip meals on occasions that were necessary, so as to avoid individuals working through their meal breaks. (Mot. For Summary Judgment, at 15.)

(*Id.* at 128.) Accordingly, the evidence submitted to the Court demonstrates that rest breaks were provided and that Plaintiff did take these rest breaks.

### 4. Waiting Time Penalty Claim (Count Five)

■ Plaintiff also brings a claim for waiting time penalties that allow the recovery of punitive fines for the time that an employee must wait for the proper payment of wages under Cal. Labor Code, § 203:

> If an employer willfully fails to pay, without abatement or reduction ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor[e] is commenced; but the wages shall not continue for more than 30 days.

Cal. Labor Code § 203. As is clear from the above text, waiting time penalties are only available when an employee is discharged or quits a position. *See Pulido v. Coca–Cola Enters.*, 2006 WL 1699328, *2 (C.D.Cal. May 25, 2006). Furthermore, to act willfully means that the employer has "intentionally failed or refused to perform an act which was required to be done." *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7–8, 177 Cal.Rptr. 803 (1981). An employer does not act willfully when there is "a good faith dispute that any wages are due...." Cal.Code Regs. tit. 8 § 13520. A "good faith dispute" is defined as follows: "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Cal.Code Regs. Tit. 8 § 13520, subd.(a).

In this case, Plaintiff never received a notice of termination (Porch Dep. at 21),

nor did he submit a letter of resignation. (*Id.* at 26.) Plaintiff, in response, contends that he has been on inactive status since December 31, 2004, and that the meaning of "inactive status" is far from clear. (Def. Opp., at 17–18). Confusion regarding this point is irrelevant because Plaintiff fails to point out any wages that he is due that Defendant has failed to pay. The only alleged unpaid wages at issue are the alleged overtime and meal break wages, which the Court rejects. Therefore, Plaintiff fails to present any genuine issue of material fact regarding the waiting time penalty claim.

### 5. Record–Keeping Violation Claim (Count Six)

■ An employer is required semimonthly or at the time of each payment of wages to supply the employee with an "accurate itemized statement in writing showing ... total hours worked by the employee...." Cal. Lab.Code § 226. Plaintiff's record keeping violation claim is derivative of his overtime, meal break, and rest break claims. Plaintiff claims that Defendant failed to include these extra hours worked in its wage statement. Other cases show that, when a record keeping claim depends upon overtime and break claims that were denied, the record keeping claim should also be denied. *See e.g., White*, 497 F.Supp.2d at 1090. Because Plaintiff's other claims must be denied, this claim must also be denied.

### 6. Unfair Business Practice claims under Cal. Bus. & Prof.Code § 17200 (Count One)

■ Unlawful, unfair, or fraudulent business acts and practices are prohibited under California law. Cal. Bus. & Prof. Code § 17200. "An unlawful business practice or act is an act or practice, committed pursuant to business activity, that

is at the same time forbidden by law." *Klein v. Earth Elements, Inc.,* 59 Cal. App.4th 965, 969, 69 Cal.Rptr.2d 623 (Cal. Ct.App.1997). Virtually any legal violation can serve as the basis for an unlawful business practice claim. *Id.* Plaintiff's unfair business practice claim is predicated on the Defendant's legal violations underlying counts two through six of the complaint. Because Plaintiff cannot prove any of these legal violations, Plaintiff also cannot prove its unfair business practice claim.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants Masterfoods USA's Motion for Summary Judgment.

IT SO ORDERED.