Steve **WHITE**, Plaintiff,

v.

**STARBUCKS CORP.**, Defendant.

No. C 06–3861 VRW.

United States District Court, N.D. California.

July 2, 2007.

Clyde Hobbs Charlton, Matthew Roland Bainer, Scott Edward Cole, Scott Cole & Associates, APC, Oakland, CA, for Plaintiff.

Gregory William Knopp, Damien DeLaney, Akin Gump Strauss Hauer & Feld LLP, Los Angeles, CA, Joel M. Cohn, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, for Defendant.

## ORDER

WALKER, Chief Judge.

This action is brought by Steve White, a former store manager of defendant Starbucks Corp (Starbucks), who purports to represent a class consisting of individuals who work or worked as managers in Starbucks' California stores. No class has been certified. Starbucks moves for summary judgment on all claims. For reasons

discussed below, Starbucks' motion is GRANTED.

# I

The following facts are undisputed. On May 3, 2004, Starbucks hired White as a store manager, and White entered the Starbucks Retail Management Training (RMT) program. Doc # 43, Ex A at 16:1–14, Ex B at 95:24–96:11. The program lasted approximately eight weeks and included classroom instruction, which took place in Berkeley, California, as well as in-store training, which took place in a Starbucks store in Concord, California. Id, Ex A at 24:4–25:20. On June 28, 2004, after completing the RMT program, White became the store manager of the Countrywood store in Walnut Creek, California. Doc # 43, Ex A at 16:22–17:9. White ended his employment with Starbucks on July 8, 2004, only 11 days after starting work at the Countrywood store. Doc # 43, Ex A at 17:6–9; 63:24–64:6.

White filed this action on June 21, 2006. Doc # 1. White asserts four claims: (1) unlawful failure to pay overtime wages in violation of Cal Labor Code §§ 201–204 and Industrial Welfare Commission (IWC) Wage Order No 7 ("off-the-clock claim")[1]; (2) failure to provide meal and rest periods in violation of Cal Labor Code §§ 226.7 and 512; (3) failure to provide accurate itemized wage statements in violation of Cal Labor Code § 226; and (4) violation of Cal Bus & Prof Code §§ 17200–17208 ("unfair competition law claim"). Doc # 1 at 9–13. This case is before the court under its diversity jurisdiction.

# II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, re-

solving any doubt in favor of the nonmoving party. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publishing Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505.

The evidence presented by both parties must be admissible. FRCP 56(e).

---

1. Although the Industrial Welfare Commission (IWC) was defunded by the California Legislature effective July 1, 2004, its wage orders remain in effect. *Bearden v. U.S. Borax, Inc.*, 138 Cal.App.4th 429, 434, 41 Cal. Rptr.3d 482 (2006).

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publishing Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements in affidavits are inadmissible. *Japan Telecom, Inc. v. Japan Telecom America Inc.,* 287 F.3d 866, 875 n. 1 (9th Cir.2002).

## A

Starbucks argues that it is entitled to summary judgment on White's off-the-clock claim for two independent reasons: (1) White cannot prove that Starbucks had knowledge that White worked off-the-clock; and (2) White cannot produce sufficient evidence to show the amount and extent of uncompensated work as a matter of just and reasonable inference. Doc # 42 at 6–16. As discussed below, the court need only address Starbucks' first argument.

To prevail on his off-the-clock claim, White must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work. *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 585, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000). Starbucks points out that White admitted in deposition that he never told anyone at Starbucks about working off-the-clock:

Q: Did you tell anybody at Starbucks Coffee that you had worked off the clock when you were employed by the company?

A: No.

Doc # 43, Ex A (White dep) at 102:11–14.

Q: All right. Mr White, you testified that you didn't inform anybody of your off-the-clock work?

A: I did not.

Q: And you testified that as far as you know nobody knew that you were working off the clock. Do you recall that testimony?

A: Yes.

Id. at 188:24–189:5.

White never told his district manager that he had worked off-the-clock (id. at 98:23–24, 102:15–17); never told the individual who conducted his exit interview that he had worked off-the-clock (id. at 100:7–10, 102:8–10, 102:15–17); and never used Starbucks' dedicated hotline to report his complaint anonymously because he "didn't feel a need to" and "there was no reason." Id. at 145:21–146:9.

Starbucks also points out that, during the 11 days he worked in the Countrywood store, White *did* record and *was* paid for nearly eight hours of overtime, one hour of which was paid at a double-time rate. Doc # 43, Ex A (White dep) at 68:11–15, 69:14–72:8, 17:6–12. White admits he was never criticized or disciplined for working overtime:

Q: And you said earlier that you were never criticized or disciplined for working overtime, as far as you can recall?

A: Me, personally?

Q: Yes.

A: Yes.

Q: That's true?

A: That's true.

Id. at 103:18–25. In addition, White knew that other employees were also reporting and being paid for overtime. Id. at 123:12–25.

White does not dispute that he never told anyone at Starbucks about working off-the-clock. White does not dispute that he and others recorded and were *paid* for overtime work. Rather, White attempts to create a dispute of fact whether Starbucks knew about some unspecified time worked off-the-clock by showing that "[d]efendant knew how much time it took to perform much of the work required by the SMs [store managers]." Doc # 46 at 8. Specifically, White points to the deposition testi-

mony of Starbucks vice president Cindy Chrispell:

Q: Have there, to your knowledge, ever been any time work studies done with regard to the work performed by store managers?

A: I know there were some done as part of the earlier work when we were making the adjustments, changing them from exempt to non-exempt.

Q: To your knowledge a time motion study was done around that point in time for the store managers. Is that your testimony?

A: Yes.

Doc # 47, Ex B (Chrispell dep) at 103:19–104:3. White also offers evidence that Starbucks formulated estimates of the amount of time required for baristas (though not store managers) to perform customer service tasks. Doc # 47, Ex D. And White points out that district managers performed monthly audits of individual stores. Doc # 47, Ex B at 78:3–14. White concludes that "[t]his level of intimate knowledge of the SMs activities, in and of itself, would support a reasonable conclusion that the Defendant should have known what its SMs were doing." Doc # 46 at 8.

Finally, White contends that "Starbucks admits it knew that Store Managers worked off-the-clock in violation of the written policies," doc # 46 at 9, based on the following testimony given by Ms Chrispell:

Q: Are store managers, to your knowledge, ever expected to perform work from home?

A: Not expected to, no.

Q: Do they, as far as you know, ever do that?

A: They sometimes do. They are not supposed to. I mean they are directed to perform their work at work. But it does happen sometimes, yes.

Doc # 47, Ex B at 113:6–12.

The court is troubled by plaintiff's evidence. While plaintiff may be able to show a material dispute whether Starbucks had actual or constructive knowledge that *some* store managers sometimes worked off-the-clock, plaintiff has not submitted evidence that Starbucks had actual or constructive knowledge that *Steve White* worked off-the-clock. Furthermore, Chrispell testified that store managers are paid for the time spent working at home. Doc # 49, Ex B at 136:13–15. In any event, the testimony is irrelevant as to White himself because White does not claim to have worked at home. Doc # 49, Ex A at 174:6–8.

Regarding White's other evidence, White does not provide the time motion study of the store manager position or present any evidence of its findings. White fails to explain how this study, which was conducted in 2002 or 2003 (doc # 49, ex B at 103:25–104:17), would give Starbucks constructive knowledge of his alleged off-the-clock work in 2004. White does not explain how time standards applied to baristas would make Starbucks aware that he was working off-the-clock. Finally, White does not explain how the district manager's store visits translate into actual or constructive knowledge. On the contrary, White testified that when he worked off-the-clock during store hours, other employees "had no knowledge if [he] was on or off the shift." Doc # 49, Ex A at 119:11–12. Further, White never testified that his district manager observed him working off-the-clock. Rather, White stated that he simply "assumed" that his district manager came to the store *when White was not present* and that he didn't know what the store manager "looked

into." Id. at 189:6–16; Doc # 43, Ex A at 189:25–190:12.

In sum, White has failed to raise genuine issues of fact. Based on White's "evidence," the court finds that no reasonable jury could conclude that Starbucks knew about White's alleged unpaid time. White's theories for imputing knowledge to Starbucks are pure conjecture. Imputing constructive knowledge would be particularly inappropriate given that White was paid for significant overtime during his brief tenure and admitted that he was never criticized for working overtime. Accordingly, Starbucks' motion for summary judgment on White's first claim for unlawful failure to pay overtime wages ("off-the-clock claim") is GRANTED.

**B**

Starbucks argues that it is entitled to summary judgment on White's meal and rest break claims because (1) the claims are untimely under the applicable statute of limitations and (2) White voluntarily chose to forego his breaks. Doc # 42 at 17–24. The court addresses each argument below.

**1**

■ Cal Labor Code § 226.7(a) provides, "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Subdivision (b) of section 226.7 further provides that, "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, *the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation* for each work day that the meal or rest period is not provided." (Italics added.) The issue is whether the "additional hour of pay" describes a "wage" or a "penalty." A three-year statute of limitations applies to the

former (Cal CCP § 338(a) ["An action upon a liability created by statute, other than a penalty or forfeiture"]), while a one-year statute of limitations governs claims for penalties (Cal CCP § 340(a) ["An action upon a statute for a penalty or forfeiture"]). Starbucks argues that claims under Cal Labor Code § 226.7 are claims for penalties. Doc # 42 at 17. This is incorrect. The California Supreme Court's April 16, 2007 decision in *Murphy v. Kenneth Cole Productions*, 40 Cal.4th 1094, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007) holds that the "additional hour of pay" for failure to provide an employee with meal or rest periods constitutes a "wage," rather than a "penalty," and accordingly, is governed by the three-year statute of limitations. *Murphy* at 1114, 56 Cal.Rptr.3d 880, 155 P.3d 284. White's employment with Starbucks ended July 9, 2004. White filed the complaint in this matter on June 21, 2006. Accordingly, White's claim for missed meal and rest breaks is timely.

**2**

Starbucks next argues that White's rest and meal break claims fail as a matter of law because White voluntarily chose to forego those breaks. The parties address White's rest claim separately from his meal claim, and the court will do the same.

**a**

■ Industrial Welfare Commission Wage Order No 7 requires California employers "to authorize and permit" a 10-minute rest period for every four hours of work. IWC Order No 7–2001, ¶ 12(A), Cal Code Regs, tit 8, § 11070, subd 12(A). The Cal Labor Code provides that an employer may not "*require* any employee to work during any meal or rest periods mandated by an applicable order of the Industrial Welfare Commission." Cal Labor Code § 226.7 (emphasis added). Star-

bucks argues that this language requires employers only to make rest breaks available, i e, employers need not ensure that employees actually take their rest periods. Doc # 42 at 19–20. White does not contend for a different interpretation, and the court agrees that the words "authorize" and "permit" only require that the employer make rest periods available. See also DLSE (Division of Labor Standards Enforcement) Op Letter, 1/28/02 (available at http://www/dir.ca.gov/dlse/opinions/2002–01–28.pdf) ("[A]n employer is not subject to any sort of penalty or premium pay obligation if an employee who was truly authorized and permitted to take a rest break, as required under the applicable wage order, *freely chooses without any coercion or encouragement* to forego or waive a rest period.") (emphasis in original).

Starbucks argues, based on the following testimony, that White decided not to take breaks of his own accord:

Q: Did you take rest periods?

A: No, I did not.

Q: Never?

A: No.

Q: Why?

A: I just didn't feel the need to do it at that time. Again, like I said, it was a new store. I was new there. Didn't do it.

Q: So that was your decision not to take the rest period?

A: Yeah.

Doc # 43, Ex A at 77:25–78:10.

In opposition, White argues that "as outlined earlier [in his brief], Plaintiff's decision to work through his [rest and meal] breaks, like his decision to work off-the-clock, was a result of Starbucks' instructions to its SMs to 'do what you got to do to get the job done' combined with the company's instruction not to exceed an assigned labor budget which was not tied to any actual 'expectation as to how many

hours per week the average store manager currently would need to work to manage the store properly.'" Doc # 46 at 20. The court understands White to be incorporating the evidence he presented on his overtime claims into his rest break claim. White's testimony and other evidence on unpaid overtime, however, never addressed the issue of unpaid rest breaks. Moreover, White's argument that a store labor budget prevented him from recording time or taking breaks lacks support. White relies on the following testimony of Starbucks vice president Cindy Chrispell:

Q: Does the company have the expectation as to how many hours per week the average store manager currently would need to work to manage the store properly?

A: No.

Q: That would change from store to store, I would imagine?

A: Yes.

\* \* \* \* \* \*

Q: One of the things that store managers are responsible for is managing their own labor budgets, correct?

A: Yes.

Q: And they don't set budgets, do they? That's set by a level higher than store manager, correct?

A: Labor budgets or budgets in general?

Q: Labor budgets.

A: The labor budget doesn't specifically get—well, the labor budget gets managed as a percentage of sales.

Q: Okay.

A. So in a macro way, the labor budget is not a fixed dollar amount. It goes up and down based on whether your business has gotten bigger or smaller.

Q: So, I'm sorry, as a percentage of sales you said, correct?

A: Yes.

\* \* \* \* \* \*

Q: Referring to the budget for a moment. The labor budget, which is handed down to the store manager by higher levels, from that budget is the—are the payroll dollars also to compensate the store manager, correct?

A: Yes.

Q: Okay. When the store manager writes the schedule, as I think we discussed earlier, I'm, you know—he or she will include himself on the schedule also?

A: Yes.

Doc # 47, Ex B at 55:5–11, 82:19–83:11, 96:13–23.

The court does not see how this evidence supports a finding that White was forced to forego rest breaks. And as Starbucks points out, Chrispell declined to characterize the labor budget as a fixed amount. Chrispell explained that (1) exceeding the labor budget was common; (2) she was unaware of a store manager being reprimanded for exceeding a labor budget; and (3) exceeding the labor budget is often an indicator of increased sales. Doc # 49, Ex B at 98:17–23, 99:1–10.

White has produced no evidence showing that he was not authorized or permitted to take rest breaks. To the contrary, White specifically testified that nobody told him or instructed him not to take a rest period at either store. Doc # 49, Ex A at 152:23–25. White's mere suggestion that he was coerced into foregoing breaks, without more, is insufficient to defeat summary judgment. Accordingly, the court GRANTS Starbucks' motion for summary judgment on White's claim for unpaid rest breaks.

**b**

■ White makes his claim for missed meal breaks pursuant to Cal Labor Code §§ 512 and 226.7. Cal Labor Code § 512 provides in pertinent part:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Cal Labor Code § 512(a).

Cal Labor Code § 226.7, as already described above, provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal.

Cal Labor Code § 226.7.

White's § 226.7 claim is based on IWC Wage Order No 7 which states:

Meal Periods

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual

consent of the employer and the employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

8 Cal Code Regs § 11070, section 11.

Starbucks argues that, similar to the rest break provision, the statutory term "provide" in Cal Labor Code §§ 512 and 226.7 demonstrates that the California Legislature intended only for employers to *offer* meal periods—not to ensure that those periods were actually taken. Doc # 42 at 22–23.

White contends that employers must affirmatively enforce the meal break requirements. Doc # 46 at 17. White relies on *Cicairos v. Summit Logistics, Inc.,* 133 Cal.App.4th 949, 953, 35 Cal.Rptr.3d 243 (2005). *Cicairos* was a case brought by truck drivers against their former employer. Plaintiffs' complaint included a claim for violation of the meal period provision of Cal Labor Code § 512 and IWC Wage Order No 9, section 11. (IWC Wage Order No 9 applies to the transportation industry, while No 7, relied on by White, applies to the mercantile industry.) The court in *Cicairos* stated that, based on the facts presented there, the defendant's obligation to provide the plaintiffs with an adequate meal period was not satisfied "by assuming that the meal periods were taken." *Cicairos* at 962–63, 35 Cal.Rptr.3d 243 (citing DLSE Opinion Letter No 2002.01.28 (Jan 28, 2002) at 1).

Starbucks argues that the court should not follow *Cicairos* because it based its holding entirely on a DLSE opinion letter that interpreted only the rest break and meal period provisions of the IWC wage order, "not the plain language of sections 226.7 and 512 of the Labor Code." Doc # 42 at 23. Starbucks also argued at the hearing on this motion that it cannot be the rule that employers must ensure that a meal period is actually taken, regardless of what an employee does, because that would create a strict liability standard.

The court agrees. In the absence of controlling California Supreme Court precedent, the court is *Erie*-bound to apply the law as it believes that court would do under the circumstances. See *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 663 (9th Cir.1998). The interpretation that White advances—making employers ensurers of meal breaks—would be impossible to implement for significant sectors of the mercantile industry (and other industries) in which large employers may have hundreds or thousands of employees working multiple shifts. Accordingly, the court concludes that the California Supreme Court,

if faced with this issue, would require only that an employer *offer* meal breaks, without forcing employers actively to ensure that workers are taking these breaks. In short, the employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take them regardless of the reason.

*Cicairos* should be read under the facts presented by that case. There, the defendant employer had a computerized system on each truck that allowed defendant to keep track of the drivers' activities, such as speed, starts and stops, and time. *Cicairos* at 962, 35 Cal.Rptr.3d 243. Furthermore, drivers had to input certain activities manually, such as road construction and heavy traffic. *Id.* Although the defendant was required to record employee meal periods under Wage Order No 9 and although a collective bargaining agreement required the company to schedule lunch periods, the employer did not schedule meal periods, did not include an activity code for them and did not monitor compliance. Id. Finally, evidence showed that the defendant's management pressured drivers to make more than one trip daily, making it harder to stop for lunch. Id. Under those facts, the court found that defendant failed to establish that it "provided" plaintiffs with their required meal periods. Id at 963. White harps on one sentence in the case stating that "employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.' " Id. at 962. That language is consistent, however, with a rule requiring an employer to *offer* or *provide* or *authorize and permit* a meal break, i.e., the interpretation that Starbucks endorses. The defendant in *Cicairos knew* that employees were driving while eating and did not take steps to address the situation. This, in combination with management policies, effectively deprived the drivers of their breaks.

In sum, Starbucks' construction of the applicable meal break provisions is consistent with the holding in *Cicairos*. Here, White offers no evidence that Starbucks pressured store managers to work through breaks and offers no Starbucks records showing that White missed meal breaks. Under White's reading of *Cicairos,* an employer with no reason to suspect that employees were missing breaks would have to find a way to force employees to take breaks or would have to pay an additional hour of pay every time an employee voluntarily chose to forego a break. This suggests a situation in which a company punishes an employee who foregoes a break only to be punished itself by having to pay the employee. In effect, employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes, entitling them to compensation of one hour of pay for each violation. This cannot have been the intent of the California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives.

White does not recall ever missing a meal period at the Concord store. Doc # 43, Ex A at 130:19–131:2. While White testifies that he sometimes missed meal periods at the Countrywood store, Starbucks points out, and White does not dispute, that it was White's decision to skip those meal periods. Doc # 43, Ex A at 153:3–8 (Q: And the few times that you did not take a meal period at the Countrywood store that was your decision as well, correct? A: Correct.) Accordingly, Starbucks' motion for summary judgment on White's claim for missed meal breaks is GRANTED.

### C

■ Starbucks seeks summary judgment on White's claims for inaccurate

wage statements and for violation of California's unfair competition law on the ground that these claims are derivative of White's off-the-clock claims and break claims. White does not dispute that his third and fourth causes of action derive from his off-the-clock and missed break claims. Accordingly, Starbucks' motion for summary judgment on White's third and fourth causes of action is GRANTED.

## III

For reasons discussed above, Starbucks' motion for summary judgment is GRANTED in its entirety. The clerk is DIRECTED to close the file and terminate all motions.

SO ORDERED.