CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Plaintiff Douglas Troester brings this putative wage-and-hour class action against Defendant Starbucks Corporation ("Starbucks"), alleging claims for (1) failure to pay minimum and overtime wages, (2) failure to provide accurate written wage statements, (3) failure to timely pay all final wages, and (4) unfair competition. (Dkt. 1-1 [Complaint, hereinafter "Compl."].) Troester alleges that Starbucks required its employees to perform certain tasks after clocking out and that Starbucks did not compensate its employees for these tasks. (Id. ¶ 10.)
On March 7, 2014, Judge Gary Feess granted Starbucks summary judgment on all claims, holding the time Troester spent in and around the store after clocking out was not recoverable because it was "de minimis." (Dkt. 37.) Troester appealed, and *1022 the Ninth Circuit certified a question to the California Supreme Court, asking whether the federal Fair Labor Standards Act's de minimis doctrine applied to claims for unpaid wages under California Labor Code sections 510, 1194, and 1197. Troester v. Starbucks Corp. , 680 F. App'x 511, 512 (9th Cir. 2016). The California Supreme Court held that "the relevant California statutes and wage order have not incorporated the de minimis doctrine found in the [Fair Labor Standards Act] .... [and] do not allow employers to require employees to routinely work for minutes off the clock without compensation." Troester v. Starbucks Corp. , 5 Cal. 5th 829, 848, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (2018), as modified on denial of reh'g (Aug. 29, 2018). It further concluded that "although California has a de minimis rule that is a background principle of state law, the rule is not applicable to the regularly reoccurring activities that are principally at issue here." Id.
In light of the California Supreme Court's answer to the certified question, the Ninth Circuit reversed and remanded the case to this Court for further proceedings. Before the Court is Starbucks's motion for summary judgment. (Dkt. 59 [hereinafter "Mot."].) For the following reasons, the motion is GRANTED IN PART and DENIED IN PART .[1]
II. BACKGROUND
In February 2008, Starbucks hired Troester to work as a barista in one of its coffee shops. (Dkt. 64-4 [Defendant's Reply Separate Statement of Undisputed Facts, hereinafter "DUF"] 1-2.) Starbucks promoted Troester to shift supervisor in June 2008. (DUF 2.) During his employment, Troester worked at multiple Starbucks locations, including stores at Hollywood Way, Enterprise Landing, and Lankershim and Magnolia. (Dkt. 64-4 [Defendant's Reply to Plaintiff's Additional Separate Statement of Undisputed Facts, hereinafter "PUF"] 2.) In January 2011, Troester stopped working for Starbucks. (DUF 1.)
While employed by Starbucks, Troester recorded his work time and clocked in and out using Starbucks's point-of-sale ("POS") system. (DUF 5.) Troester admits Starbucks always paid him for all the time he recorded in the POS system. (DUF 6.) Troester also recorded time in the punch communication log. Troester used the punch communication log to capture time spent on tasks such as running errands for the store before clocking in, assisting a customer in the store lobby while not clocked in, and talking to the store manager about "official business" while not clocked in. (DUF 8.) Troester used the punch communication log multiple times to record time spent on tasks performed after clocking out, such as picking up product for the store. (DUF 40.) Troester also used the punch communication log multiple times to correct wrong time punches. (DUF 41.) Troester admits that Starbucks always paid him for the time he recorded in the punch communication log. (DUF 9.)
At issue in this case is the time that Troester allegedly worked off the clock on certain closing shifts while he was a shift supervisor. Troester claims that he performed unpaid work during shifts at the end of the business day. (DUF 11.) Troester asserts that Starbucks trained its employees to clock out before performing certain closing tasks. (PUF 19.) Based on the *1023 software used by Starbucks, Troester had to clock out before using the store computer to transmit sales data to Starbucks headquarters. (DUF 13.) To send data to Starbucks headquarters, Troester selected "close computer" with the computer's mouse or keyboard, entered a password, and pressed the "Y" key. (DUF 14.) Troester then set the store alarm by typing a numeric code on the alarm panel located near the computer. (DUF 15.) The store's alarm system required employees leave the store within sixty seconds of setting the alarm. (DUF 22.) After activating the alarm, Troester exited and locked the front door. (DUF 23.) He then walked coworkers to their vehicles. (DUF 26.)
In total, Troester contends he spent about four to ten minutes performing these tasks. Troester claims that it took him approximately "one minute to two minutes" to send the sales data and activate the alarm after clocking out. (DUF 17.) A comparison of the store's alarm records to Troester's time records indicates that Troester activated the alarm, on average, within one minute of clocking out. (DUF 19.) The comparison also indicates that Troester activated the alarm within two minutes of clocking out on more than 90 percent of his shifts. (DUF 20.) In total, Troester estimates that, from December 2008 to October 2010, he was not paid wages for the approximately 12 hours and 50 minutes of time spent between clocking out and activating the alarm. (PUF 34.) Troester also estimates that it took thirty seconds to walk out of the store after activating the alarm and that it took around fifteen seconds to lock the door. (DUF 24-25.) Troester estimates walking his coworkers to their cars took thirty-five to forty-five seconds. (DUF 27.) Troester contends he should be paid for the time he spent sending sales data to headquarters, setting the alarm, walking out of the store, locking the door, and walking coworkers to their cars.
Troester also claims that he performed certain tasks off the clock on a less frequent basis. Troester contends that every "couple of months," after clocking out and exiting the store, he brought the store's patio furniture inside the store after he and the other employees forgot to bring the patio furniture in while still on the clock. (DUF 29.) He also asserts that two or three times a month, after clocking out and exiting the store, he stayed outside the store with a coworker who was waiting for a ride. (DUF 31.)
III. LEGAL STANDARD
The Court may grant summary judgment on "each claim or defense-or the part of each claim or defense-on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. ; see also Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Id. at 325, 106 S.Ct. 2548. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 249, 106 S.Ct. 2505.
*1024 Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, Adickes v. S.H. Kress & Co. , 398 U.S. 144, 158-60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, Celotex Corp. , 477 U.S. at 325, 106 S.Ct. 2548. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." Anderson , 477 U.S. at 256, 106 S.Ct. 2505. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)-(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." Anderson , 477 U.S. at 252, 106 S.Ct. 2505.
In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. Id. ; United States v. Diebold, Inc. , 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ; T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n , 809 F.2d 626, 630-31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. Eastman Kodak Co. v. Image Tech. Servs., Inc. , 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. Thornhill Publ'g Co. v. GTE Corp. , 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact-including an item of damages or other relief-that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).
IV. DISCUSSION
Starbucks moves for summary judgment on all of Troester's claims. Starbucks first argues that the Court cannot apply the California Supreme Court's holding "retroactively" because it would violate due process. Starbucks also argues that Troester cannot recover for any tasks that occurred after he exited the store because these tasks were irregular or brief and not compensable. Finally, Starbucks argues that even if Troester's wage claims survive, his other claims fail for a variety of reasons. The Court addresses each argument in turn.
A. Due Process
Starbucks asserts that the Court cannot hold Starbucks liable for Troester's unpaid wage claim without violating *1025 Starbucks's federal due process rights. "The due process clause of the Fourteenth Amendment guarantees individuals the right to fair notice of whether their conduct is prohibited by law." Forbes v. Napolitano , 236 F.3d 1009, 1011 (9th Cir. 2000). Pursuant to this right, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." United States v. AMC Entm't, Inc. , 549 F.3d 760, 768 (9th Cir. 2008) (quoting Grayned v. City of Rockford , 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ). Starbucks claims it did not know that the de minimis doctrine did not apply to California labor law until the California Supreme Court's decision in this case, so the dictates of due process preclude Starbucks from facing liability for its failure to compensate Troester for the time spent on closing tasks after clocking out. The Court disagrees.
In responding to the Ninth Circuit's certified question, the California Supreme Court considered whether the Fair Labor Standards Act's de minimis doctrine, as stated in Anderson v. Mt. Clemens Pottery Co. , 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), and Lindow v. United States , 738 F.2d 1057, 1063 (9th Cir. 1984), applied to claims for unpaid wages under California Labor Code sections 510, 1194, and 1197. Troester , 5 Cal. 5th at 834-35, 235 Cal.Rptr.3d 820, 421 P.3d 1114. The California Supreme Court had not previously considered the issue. Noting that California courts liberally construe the Labor Code and wage orders to favor the protection of employees, the California Supreme Court found "no indication in the text or history of the relevant statutes and Industrial Welfare Commission (IWC) wage orders" that California had adopted the federal de minimis rule. Id. at 835, 839, 841, 235 Cal.Rptr.3d 820, 421 P.3d 1114. Since the applicable wage order specifies that employees must be paid "for all hours worked" and the Labor Code contemplates that employees will be paid for all work performed, there is no suggestion that employees should be paid anything less. Id. at 840, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (citing IWC Wage Order, No. 5-2001, §§ 4(A), (3)(A); Cal. Lab. Code § 510(a) ). Indeed, the California Supreme Court found only one published California appellate court decision applying the de minimis rule. Id. at 841, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (citing Gomez v. Lincare , 173 Cal. App. 4th 508, 527-28, 93 Cal.Rptr.3d 388 (2009) ). That court did not even consider whether the rule should apply to California wage claims and ultimately concluded that the rule did not apply to the case before it. Id. at 841, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (citing Gomez , 173 Cal. App. 4th at 527-28, 93 Cal.Rptr.3d 388 ).
Nor did the California Supreme Court find any support for applying the de minimis rule, as a principle of California law in other contexts, to the wage and hour claims asserted here, where Starbucks required Troester to work off the clock several minutes per closing shift. Id. at 835, 235 Cal.Rptr.3d 820, 421 P.3d 1114. Although California has codified the maxim that "[t]he law disregards trifles," Cal. Civ. Code § 3533, the "application of a de minimis rule is inappropriate when 'the law under which this action is prosecuted does care for the small things,' " Troester , 5 Cal. 5th at 844, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (quoting Francais v. Somps , 92 Cal. 503, 506, 28 P. 592 (1891) ). Regarding wage-and-hour claims, the law "is indeed concerned with 'small things.' " Id. A few extra minutes each day can add up, amounting to enough to pay a utility bill, buy a week of groceries, or cover a month of bus fares. Id. at 847, 235 Cal.Rptr.3d 820, 421 P.3d 1114. The California Supreme Court also noted that the IWC, *1026 although not specifically addressing the de minimis rule, had consistently issued more expansive regulations than the Fair Labor Standards Act in defining the time for which an employee must be compensated. Id. at 845, 235 Cal.Rptr.3d 820, 421 P.3d 1114. Accordingly, "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." Id. at 847, 235 Cal.Rptr.3d 820, 421 P.3d 1114.
Starbucks's characterizes the California Supreme Court's decision as a "new standard" that "upended decades of authority." (Mot. at 6, 12.) This is inaccurate. Prior to the decision in this case, there was no controlling precedent. See California Rules of Court 8.548(a) (permitting Ninth Circuit to certify question only where "[t]here is no controlling precedent"). Starbucks cites a number of federal district court decisions for the proposition that "dozens" of courts have "uniformly recognized Lindow as applicable to California Labor Code claims." (Mot. at 9.) Many of these decisions, however, engaged in no analysis about whether the federal de minimis doctrine should apply to California law or indicate uncertainty regarding the applicability of the de minimis doctrine to state law claims. See, e.g. , Aldapa v. Fowler Packing Co. , 323 F.R.D. 316, 339 (E.D. Cal. 2018) ("Defendants cite no authority establishing that a de minimis defense is cognizable under state law ...."); Hubbs v. Big Lots Stores, Inc. , 2017 WL 2304751, at *8 (C.D. Cal. May 12, 2017) ("[T]here may be further development of the law in this area ....").
Starbucks also claims it did not have fair notice due to opinion letters published by the Division of Labor Standards Enforcement ("DLSE") in 1988 and 1994, in which DLSE advised that it had adopted the Lindow test and federal de minimis rule for purposes of compensation. (Mot. at 8.) Although DLSE advisory opinions may be a source of informed judgment for courts and litigants, they are not binding. Troester , 5 Cal. 5th at 841, 235 Cal.Rptr.3d 820, 421 P.3d 1114. And in adopting the federal de minimis rule, the DLSE based its decision on the general proposition that federal case law construing the FLSA "may sometimes provide guidance to state courts in interpreting the IWC Orders." Id. (quoting DLSE Opinion Letter No. 1988.05.16 at 1.) The California Supreme Court, however, found no indication of any intent by the IWC to incorporate a less protective federal rule. In addition, the DLSE Enforcement Manual specifically noted that "[a]n employer may not rely on [a de minimis doctrine] to arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him." DLSE Enforcement Manual § 47.2.1.1 (2002 update). The same result is here: Starbucks had fair notice of its obligation to pay employees for the time regularly spent completing work tasks at the end of each closing shift.
Contrary to Starbucks's assertion, this is not a situation where an agency changed its own interpretation of a regulation or where a statute was unconstitutionally vague. Cf. AMC , 549 F.3d at 764 (finding ADA regulation did not provide fair notice where agencies failed to provide clear direction and the phrase at issue was ambiguous and lacked a concrete meaning); see also Robles v. Domino's Pizza, LLC , 913 F.3d 898, 907-08 (9th Cir. 2019) (distinguishing AMC and holding there are not due process concerns where a statutory provision is "flexible," but not ambiguous). This is a situation where the California Supreme Court interpreted California labor law to hold there was no basis for *1027 inferring a federal doctrine where California labor law consistently offers more protections for employees. See Newman v. Emerson Radio Corp. , 48 Cal. 3d 973, 983, 258 Cal.Rptr. 592, 772 P.2d 1059 (1989) (noting the general rule that the decisions of a court of last resort are retroactive, even though "every time [the California Supreme Court] overrules authority developed in the lower courts, but not yet definitively determined, it affects expectations of litigants who stood to gain or lose").
In sum, the Court concludes that Starbucks had fair notice of its obligation to pay its employees for all hours worked, including minutes of off-the-clock work performed by employees on a regular basis or as a regular feature of the job. The California Supreme Court's decision did not "upend[ ] a rich body of precedent." (See Mot. at 11.) Courts had long recognized that there was no binding authority on the issue and that California labor law is more protective of employees than federal law. Nor did the California Supreme Court's decision create a "new standard." Rather, it interpreted the relevant statutes and wage orders according to the text, history, and general principles of California law.
B. Other Tasks Underlying Troester's Unpaid Wages Claim
In the alternative, Starbucks seeks partial summary judgment on Troester's unpaid wages claim to the extent Troester seeks recovery for time spent (1) waiting for coworkers' rides to arrive, (2) bringing in patio furniture, and (3) walking coworkers to their cars.[2] The Court evaluates each in turn.
1. Waiting for Coworkers' Rides
As part of his unpaid wages claim, Troester seeks to recover for the time he spent waiting for coworkers' rides. Troester contends that about two or three times a month, Troester stayed outside the store with a coworker who was waiting for a ride. (DUF 31.) Troester, however, does not recall any Starbucks manager ever instructing or asking him to do so. (DUF 33.) Troester's managers also testified that they never asked Troester or anyone else to wait with coworkers for their rides. (DUF 34.)
Starbucks contends Troester cannot recover wages for the time spent waiting for coworkers' rides to arrive because this is not compensable work. Wage Order 5 requires employers to pay employees a minimum wage for "all hours worked in the payroll period." Subdivision 2(K) of Wage Order 5 defines "hours worked" as "the time during which an employer is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." The California Supreme Court has held that the two phrases-"subject to the control of an employer" and "time the employee is suffered or permitted to work"-are "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.' " Morillion v. Royal Packing Co. , 22 Cal. 4th 575, 582, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000). This definition of "hours worked," however, does not include time spent engaging in personal activities by choice. See, e.g. , Watterson v. Garfield Beach CVS, LLC , 694 F. App'x 596, 597 (9th Cir. 2017) (holding time spent completing questionnaires for an optional wellness program was not "hours worked");
*1028 Alonzo v. Maximus, Inc. , 832 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011) (holding time spent in office before shift was not "hours worked" where employer suggested, but did not require, that employees arrive early); Overton v. Walt Disney Co. , 136 Cal. App. 4th 263, 271, 38 Cal.Rptr.3d 693 (2006) (holding time spent commuting to worksite in employer's bus was not "hours worked" because employer did not require that employees take the bus).
When Troester waited for his coworkers' rides to arrive, he was neither subject to Starbucks's control nor carrying out his job duties. While waiting for coworkers' rides, Troester was outside the store and had completed all his closing tasks. Troester admits that managers never instructed or told him to wait with his coworkers after their shifts, and Troester does not point to any Starbucks policy that required him to do so. He also presents no evidence that Starbucks knew or should have known that he was working off the clock by waiting with other employees for their rides. Troester therefore presents no evidence to create a genuine dispute of material fact that the time he spent waiting for coworkers' rides is compensable as "hours worked." Starbucks is entitled to partial summary judgment on this ground. Troester cannot recover for the time he spent waiting for coworkers' rides after his shifts.
2. Bringing in Patio Furniture
Troester also seeks to recover for the time he spent bringing in patio furniture. According to Troester, every "couple of months," after clocking out and exiting the store, Troester brought the store's patio furniture inside the store after he and the other employees forgot to do so while they were still on the clock. (DUF 29.) Troester never used the punch communication log to document the off-the-clock time he spent bringing in patio furniture. (DUF 39.) He also never raised any concerns with the store manager, the district manager, or the human resources department. (DUF 42.)
Starbucks argues that Troester cannot recover for the time spent bringing in patio furniture because there is no evidence that Starbucks knew or should have known of this work. Troster only brought in the patio furniture off the clock if he or his coworkers forgot to do so while they were clocked in. (DUF 29.) Although Troester was no longer under Starbucks's control, Troester contends that he was "suffered or permitted to work." To prove that he was "suffered or permitted to work," however, Troester must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work. Morillion , 22 Cal. 4th at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139. Troester presents no evidence that Starbucks knew or should have known that Troester was occasionally bringing in patio furniture while off the clock. He never used the punch communication log to record this time and he never raised any concerns with management. (DUF 39, 42.) Troester has failed to present any evidence to create a dispute of material fact as to whether off-the-clock time spent bringing in patio furniture is compensable as "hours worked." Cf. White v. Starbucks Corp. , 497 F. Supp. 2d 1080, 1085 (N.D. Cal. 2007) (granting summary judgment to defendant where employee failed to present evidence of the employer's knowledge that the employee worked off the clock). Starbucks is entitled to partial summary judgment on this ground.
3. Walking Coworkers to Cars
Troester also seeks to recover for the time he spent walking his coworkers to their cars. Troester asserts that it was Starbucks's policy for shift supervisors to *1029 walk coworkers to their vehicles at the end of a closing shift. A training document for shift supervisors states:
Your job as a shift supervisor is to ensure that all of the closing tasks are completed, and not to complete all the closing tasks yourself.... [T]here are a few safety and security tasks that only the shift supervisor can handle ....
(Dkt. 62-23 Ex. T.) The document then lists a number of shift supervisor-specific closing tasks, including "[e]nsure all pars/prep is made for the next day," "[c]heck voicemail," "[c]hange out all tills," "[a]rm the alarm system," and, lastly, "[w]alk partners to their vehicles." (Id. ) Starbucks contends walking coworkers to their cars was not a job requirement, but a common courtesy. (PUF 28.) Troester claims that it took thirty-five to forty-five seconds to walk his coworkers to their cars. (DUF 27.)
Starbucks argues that Troester cannot recover for the time he spent walking coworkers to their cars because Troester cannot prove that the time was "hours worked." The training document, however, explicitly states that a shift supervisor must complete all closing tasks, including walking employees to their vehicles. Starbucks also evaluated shift supervisors based on their ability to perform closing duties and follow operational procedures to ensure the safety and security of their coworkers. (PUF 26.) Based on the training document, it is reasonable to infer that walking coworkers to their vehicles was one of a shift supervisor's responsibilities. A factfinder also might reasonably infer that Starbucks had at least constructive knowledge that their shift supervisors worked off the clock, since employees would walk out only after they had all clocked out and Starbucks requires at least two employees to be in the store at all times. (See PUF 9.) There is a genuine dispute of material fact regarding whether Troester can recover for the time spent walking coworkers to their vehicles as "hours worked."
Starbucks also argues that it is entitled to summary judgment because this task was irregular or brief and therefore falls under the California Supreme Court's narrower version of the de minimis rule. In holding that the de minimis rule did not apply to unpaid wages claims for regularly occurring activity, the California Supreme Court "decline[d] to decide whether a de minimis principle may ever apply to wage and hour claims." Troester , 5 Cal. 5th at 843, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (emphasis added). It left open the possibility that the de minimis doctrine might apply to activity that is "irregular or rarely occurring" or involves a task like paperwork that takes a minute or less of an employee's time. Id. One possible scenario was an employee reading an e-mail notification of a shift change during off-work hours. Id. As another example, the California Supreme Court cited to a federal district court case applying the de minimis doctrine to off-the-clock time police officers spent cleaning radios, wiping safety vests, and oiling handcuffs, as these activities took less than a minute and were not performed on a regular basis. See id. (citing Musticchi v. City of Little Rock , 734 F. Supp. 2d 621, 633 (E.D. Ark. 2010) ). Justice Kruger's concurrence suggested additional scenarios where a "rule of reason" might preclude litigation over unpaid wages, such as the time it takes an employee to log into a computer or the minute or two an employee spends helping a customer while waiting in the store after clocking out. See id. at 855, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (Kruger, J., concurring).
Starbucks has failed to establish that the de minimis doctrine should apply to the *1030 time Troester spent walking his coworkers to their cars. Starbucks included walking coworkers to their vehicles as part of a list of closing tasks in its training materials for shift supervisors, suggesting that this was a regularly reoccurring activity, not just an "irregular" or "rarely occurring" occasion. Id. at 848, 235 Cal.Rptr.3d 820, 421 P.3d 1114 (concluding the de minimis rule is "not applicable to ... regularly reoccurring activities"). Troester testified he spent thirty-five to forty-five seconds walking coworkers to their cars at the end of closing shifts. (DUF 27.) Although this task took less than a minute each day, California wage-and-hour law "is indeed concerned with 'small things.' " Troester , 5 Cal. 5th at 844, 235 Cal.Rptr.3d 820, 421 P.3d 1114. And this time is not entirely insignificant when aggregated over time and added to the other closing tasks that Troester performed off the clock, like sending sales data, activating the alarm, and locking the door. Starbucks is not entitled to partial summary judgment on this ground.
C. Other Claims
Starbucks also argues that it is entitled to summary judgment on Troester's final pay claim because Troester cannot prove the requisite intent. To prevail on the final pay claim, Troester must prove that Starbucks "willfully" failed to pay final wages. Cal. Lab. Code § 203. A failure to pay wages is not willful if there is "a good faith dispute that any wages are due." Cal. Code Regs., tit. 8, § 13520(a). A good faith dispute exists "when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee. That a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Id. However, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.' " Id.
Starbucks is entitled to summary judgment on Troester's final pay claim because there was a good faith dispute that wages were due. Until the California Supreme Court's decision in this case, it was reasonable for Starbucks to assert that it did not owe any wages under the de minimis doctrine. The DLSE Enforcement Manual suggested courts may apply the federal de minimis doctrine to state law claims, and a number of courts had in fact applied this doctrine to claims under California labor law. Although Starbucks's defense was ultimately unsuccessful, it was reasonable for Starbucks to assert this defense.
Starbucks also moves for summary judgment on Troester's wage statement claim. To prevail on his wage statement claim, Troester must prove that Starbucks committed a "knowing and intentional" violation. Cal. Lab. Code § 226(e)(1). Starbucks claims that it did not commit a "knowing and intentional" violation since there was a good faith dispute. The statute, however, does not extend the good faith dispute defense to wage statement claims. Cf. Cal. Code Regs., tit. 8, § 13520(a) (stating the good faith defense applies only to claims under section 203 ). The California Labor Code makes no mention of a good faith dispute defense under section 226(e)(3). The statute defines a "knowing and intentional failure" as not including "an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Labor Code § 226(e)(2)(C)(3). Section 226(e)(3) also directs factfinders to consider, as one factor, whether the employer had adopted a set of policies that complied with section 226. Id. This factor would be irrelevant if an employer's good faith belief of compliance *1031 would be sufficient to defeat any wage statement claim. See Garnett v. ADT LLC , 139 F. Supp. 3d 1121, 1134 (E.D. Cal. 2015) (concluding no good faith dispute defense is available for wage statement claims); see also Bernstein v. Virgin Am., Inc. , 227 F. Supp. 3d 1049, 1076 (N.D. Cal. 2017) (same). Accordingly, Starbucks is not entitled to summary judgment on Troester's wage statement claim.
Starbucks also argues that is entitled to summary judgment on Troester's claim for injunctive relief because he lacks standing. A plaintiff must have standing with respect to each remedy he seeks, and a named plaintiff must have standing in his own right, even if he seeks to represent a class of individuals who do have standing. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc. , 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ; Huynh v. Chase Manhattan Bank , 465 F.3d 992, 1001 n.7 (9th Cir. 2006). A plaintiff seeking injunctive relief must demonstrate a real or immediate threat of an irreparable injury. Clark v. City of Lakewood , 259 F.3d 996, 1007 (9th Cir. 2001) ; Milligan v. Am. Airlines, Inc. , 327 F. App'x 694, 696 (9th Cir. 2009) (finding plaintiff did not have standing to seek injunctive relief for labor law violations because she was no longer an employee). Here, Troester no longer works at Starbucks. He also submits no opposition to Starbucks's contention that he lacks standing to seek injunctive relief. Starbucks is entitled to summary judgment on Troester's claim for injunctive relief.
V. CONCLUSION
For the foregoing reasons, Starbucks's motion for summary judgment is GRANTED IN PART and DENIED IN PART . Starbucks is not entitled to summary judgment on Troester's unpaid wage claim to the extent Troester seeks to recover for time spent sending sales data, activating the alarm, walking to the door, locking the store, and walking coworkers to their cars. Starbucks is entitled to partial summary judgment on Troester's unpaid wage claim to the extent he seeks to recover for off-the-clock time spent waiting for coworkers' rides and occasionally taking in patio furniture if he or other employees forgot to do so while clocked in. Starbucks is also entitled to summary judgment on Troester's final pay claim and claim for injunctive relief. Starbucks is not entitled to summary judgment on Troester's wage statement claim.

Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. See Fed. R. Civ. P. 78 ; Local Rule 7-15. Accordingly, the hearing set for April 22, 2019 at 1:30 p.m. is hereby vacated and off calendar.

In his opposition, Troester clarified he is not seeking to recover for time spent occasionally reopening the store so that a coworker could retrieve a coat that he or she had forgotten. (Dkt. 62 [Opposition] at 13 n.1.)